IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA

SAMUEL D. EDWARDS, )
)
Plaintiff, )
)
v. ) Case No. CIV-04-096-KEW
)
PEPSICO, INC., a North )
Carolina corporation; )
PEPSI-COLA COMPANY, a North )
Carolina corporation; )
CONOPCO, INC. d/b/a )
THOMAS J. LIPTON COMPANY, )
a Virginia corporation; )
WM. W. MEYER & SONS, INC., )
an Illinois corporation; )
B.W. SINCLAIR, INC., a Texas )
corporation; LOCKWOOD GREENE )
ENGINEERS, INC., a foreign )
corporation; and JANE DOE, )
a foreign resident, )
)
Defendants. )

## OPINION AND ORDER

This matter comes before this Court on the Motion for Summary Judgment filed by Holden & Carr (Docket Entry #385) and Cross Motion for Summary Judgment filed by Capron & Edwards (Docket Entry #390). Timely responses and replies were filed to the Motions, making them ripe for ruling.

The dispute represented in the subject Motions entails a determination as to which attorney or law firm representing Plaintiff is entitled to the attorney's fees generated by virtue of a successful jury verdict obtained in this case. Defendants are strangers to the events which give rise to this conflict and, therefore, did not participate in the briefing of the issues.

The facts essential for a dispositive ruling on the Motions are largely not in dispute. The interpretation of those facts do require court intervention.

On March 4, 2004, the law firm of Holden & Carr, which at the time was known as Holden & McKenna[1], entered into a document with Plaintiff entitled "Agreement Between Client and Attorney Contingent Fee Contract" (the "Agreement"). Plaintiff's counsel of record, Stephen J. Capron ("Capron"), who at the time of the execution of the Agreement was a member of Holden & Carr, negotiated and prepared the Agreement.

Under the terms of the Agreement, Holden & Carr agreed to provide legal representation to Plaintiff in connection with his "products liability and/or negligence claims against PepsiCo and related entities." The scope and duration of the relationship between the signatories to the Agreement is outlined as requiring Holden & Carr "to bring said actions and prosecute the same through trial only, or otherwise satisfactory settlement [to Plaintiff and Holden & Carr] before trial."

Holden & Carr's fees were calculated under the Agreement in accordance with the following terms:

1. In the event said cause or causes are settled without suit; or in the event suit is filed and

---

[1] For the sake of simplicity and clarity, this Court will refer to the law firm representing Plaintiff as "Holden & Carr," recognizing the actual Agreement at issue in the case refers to the firm by its prior incarnation, "Holden & McKenna."

2

  successfully settled or otherwise resolved before pre-trial, a sum equal to forty-five percent (45%) of the first $200,000 of damages recovered with be [Holden & Carr's] fee.

2.  In the event said cause of causes are settled after pre-trial, but before any appeal, or in the event said cause or causes are successfully tried and collection of any judgment is made before any appeal is filed, a sum equal to fifty percent (50%) of all damages recovered will be [Holden & Carr's] fee.

3.  In the event that damages in excess of $200,00 are recovered, a sum equal to fifty percent (50%) of those damages in excess of $200,00 will be [Holden & Carr's] fee in addition to [Holden & Carr's] fee described in paragraph number one.

4.  In the event a judgment obtained is appealed by the defendant or defendants, or in the event that [Plaintiff] deems an appeal to be appropriate for any reason, [Holden & Carr] is not obligated to engage in any representation of [Plaintiff] on appeal. Any such representation will be negotiated separately from this agreement for representation in the trial court, and any agreement reached between the parties for such representation will be subject to a separate written contract or will not be enforceable by either party.

       \* \* \*

6.  All necessary costs and expenses of said litigation, including the necessary personal expenses of [Holden & Carr] in connection therewith, shall be advanced by [Holden & Carr], but shall be borne and paid by [Plaintiff] and shall be deducted from that portion of the total recovery before [Holden & Carr's] fee is calculated.

(Bracketed information added by this Court.)

  The Agreement also provided for the unilateral withdrawal of representation by counsel and termination of the Agreement. The

3

effect of the Agreement's termination upon the terms of compensation are reflected in Paragraph D, which states

> D. If representation is terminated by [Plaintiff] or by [Holden & Carr] for any reason, [Holden & Carr] shall be entitled to compensation at the rate of $200.00 per hour for all work performed by [Holden & Carr] for [Plaintiff], and at the rate of $100.00 per hour for all work performed by any paralegal for [Plaintiff]. Further, [Plaintiff] granted [Holden & Carr] a lien against any proceeds from the immediately contemplated litigation and any related litigation involving the same parties or basic nucleus of common facts for any amounts owed under this Agreement. This lien will not be extinguished or defeated by any dismissal of any such cause of action.

(Bracketed information added by this Court.)

On March 10, 2004, Holden & Carr filed this action for Plaintiff. The Complaint filed in this case bore a notation, "ATTORNEY LIEN CLAIMED."

The case proceeded to jury trial beginning on February 14, 2005. Plaintiff's interests were represented by Capron, then working in the Holden & Carr law firm. On February 18, 2005, the trial culminated in a jury verdict in favor of Plaintiff and against Defendants B. W. Sinclair and the PepsiCo entities in the total amount of $1,500,000.00. Judgment was entered by this Court on February 22, 2005.

Post-trial motions were filed by Defendants B. W. Sinclair and the PepsiCo entities on February 28, 2005 and March 4, 2005, respectively. Additionally, the parties filed proposed findings of fact and conclusions of law on the issue of indemnity between the

defendants against whom judgment was entered. All parties agreed the indemnity issue would be determined by this Court in a non-jury proceeding, post-trial.

On March 21, 2005, the PepsiCo entities appealed the jury verdict. On October 11, 2005, Plaintiff appealed the Court's granting of judgment as a matter of law in favor of Defendant Conopco, Inc. d/b/a Thomas J. Lipton Company and the entry of judgment in favor of Defendants Wm. W. Meyer & Sons, Inc. and LGE (Old Company), Inc. f/k/a Lockwood Greene Engineers, Inc. in accordance with the jury's verdict.

On June 30, 2005, Capron resigned from the firm of Holden & Carr. Soon thereafter on July 11, 2005, Plaintiff requested by e-mail that his files and his representation be transferred by Holden & Carr to Capron. By correspondence dated July 20, 2005, Holden & Carr's counsel informed Capron that Plaintiff's files were available for pick up from their offices.

By Order and Judgment entered March 24, 2006, this Court granted the PepsiCo entities' cross claim for indemnity against B. W. Sinclair, Inc. This determination was also appealed by B. W. Sinclair, Inc. on April 11, 2006.

On April 6, 2006, Plaintiff, represented by Capron & Edwards, filed an Amended Notice of Appeal. This appeal challenged the Court's decision to grant the judgment as a matter of law on the issue of punitive damages.

On June 30, 2006, Capron informed Holden & Carr that he had received partial payment on the judgment entered in this case. Specifically, B. W. Sinclair, Inc. paid Plaintiff's counsel $890,728.20. The PepsiCo entities tendered a check in the amount of $881,554.60, although at the time of briefing on the subject Motions the payment had not been accepted by Plaintiff's counsel.

On July 13, 2006, Holden & Carr notified Capron by letter that it claimed $435,364.10 in attorney's fees, relying upon the Agreement. Holden & Carr reserved the right to claim further fees from any amounts received from the PepsiCo entities, once the dispute over a cover letter was resolved. The letter requested the checks be delivered for endorsement and that the disputed amount be deposited in trust. Of the disputed amount to be paid by the PepsiCo entities, Holden & Carr claim an additional $475,290.22.

On July 20, 2006 (filed in this Court on July 24, 2006), the appeal of the jury verdicts by the PepsiCo entities was voluntarily dismissed.

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Universal Money Centers v. A.T. & T., 22 F.3d 1527, 1529 (10th Cir.), *cert. denied*, 513 U.S. 1052, 115 S.Ct. 655,

130 L.Ed.2d 558 (1994). The moving party bears the initial burden of showing that there is an absence of any issues of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 2553-54, 91 L.Ed.2d 265 (1986). A genuine issue of material fact exists when "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 106 S.Ct. 2505, 2510-11, 91 L.Ed 2d 202 (1986). In determining whether a genuine issue of a material fact exists, the evidence is to be taken in the light most favorable to the nonmoving party. Adickes v. S.H. Kress & Co., 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). Once the moving party has met its burden, the opposing party must come forward with specific evidence, not mere allegations or denials of the pleadings, which demonstrates that there is a genuine issue for trial. Applied Genetics v. Fist Affiliated Securities, 912 F.2d 1238, 1241 (10th Cir. 1990); Posey v. Skyline Corp., 702 F.2d 102, 105 (7th Cir. 1983). With respect to the material facts relevant to the Motion in question, this Court finds no significant dispute in the facts presented by the parties. The issue for resolution, therefore, is limited to which party is entitled to summary judgment, given that "[t]he interpretation of an unambiguous contract is a question of law to be determined by the court and may be decided on summary judgment." Public Service Co. of Oklahoma v. Burlington Northern Railroad Co., 53 F.3d 1090, 1096 (10th Cir.

7

1995)(citations omitted). Neither party has argued in the briefing that the Agreement is ambiguous.

It cannot be legitimately disputed that Holden & Carr, as the original counsel retained by Plaintiff to represent him in this action, perfected its attorney's lien under Oklahoma law. By including the denotation on the original Complaint "ATTORNEY LIEN CLAIMED," Holden & Carr complied with the Oklahoma statute to establish its lien on any recovery obtained through the successful prosecution of the action. Okla. Stat. tit. 5 § 6.

The issue of calculating the fee due Holden & Carr, then, turns on the interpretation of the various provisions of the Agreement. As is typical in most contract cases, the precepts governing the construction and interpretation of an arms-length, non-adhesive contract under Oklahoma law are in play. "A contract must be considered as a whole so as to give effect to all its provisions without narrowly concentrating upon some clause or language taken out of context. The language in a contract is given its plain and ordinary meaning unless some technical term is used in a manner meant to convey a specific technical concept. The court must interpret a contract so as to give effect to the intent of the parties at the time the contract was formed. . . . [W]here a contract is complete in itself and, as viewed in its entirety, is unambiguous, its language is the only legitimate evidence of what the parties intended. The intention of the parties cannot be

determined from the surrounding circumstances, but must be gathered from a four-corners' examination of the contractual instrument in question. Mercury Inv. Co. v. F.W. Woolworth Co., 706 P.2d 523, 529 (Okla. 1985)(citations omitted). Thus, we begin with a paragraph-by-paragraph inspection of the Agreement.

Paragraph A(1) of the Agreement is clearly only operative if Plaintiff's claims are "settled without suit; or in the event suit is filed and successfully settled or otherwise resolved before pre-trial." This case proceeded to jury trial, making this provision ineffective.

Paragraph A(2) of the Agreement comes into play if a case filed on Plaintiff's behalf is "settled after pre-trial, but before any appeal, or in the event said cause or causes are successfully tried and collection of judgment is made before any appeal is filed." This case was not settled. It was successfully tried, but the judgment was not collected before the filing of the appeal by the PepsiCo entities on March 21, 2005. By its express terms, this provision has no applicability to the factual circumstances presented by this case.

Paragraph A(3) of the Agreement applies in calculating the fees due to Holden & Carr if the damage recovery is "in excess of $200,000." This obviously occurred in this case. In that event, Holden & Carr is entitled to 50% of the damages "in excess of $200,000" "in addition to the Attorney's fee described in paragraph

number one." Plaintiff asserts this provision must be read in conjunction with Paragraph A(1) such that it only applies when Plaintiff's claims were settled prior to trial, given the incorporation of Paragraph A(1)'s fee calculation. Plaintiff also perceives a conflict between Paragraph A(2) and A(3), if the latter is interpreted to apply in the circumstances presented by this case. This Court does not agree. Distinct differences in timing are noted between the two paragraphs – a 50% fee on the entire recovery is permitted if the judgment is collected without the extra burden and delay precipitated by an appeal under A(2) while A(3) only allows a 45% recovery on a recovery of $200,000 or less and 50% recovery on the excess over $200,000 in all other circumstances, including recovery after the filing of an appeal. Indeed, to interpret the provisions as Plaintiff suggests would leave no provision for the calculation of attorneys' fees in the event a matter is successfully tried and recovery of the judgment is not obtained until after the filing of an appeal. Such could not have been the intent of the parties.

Moreover, nothing in the language employed in the Agreement suggests Paragraph A(3) is limited to the circumstances related in Paragraph A(1). Plaintiff's interpretation would require a "reading in" of language not present to arrive at the result he urges, as Paragraph A(3) does not reference the same settlement timing requirements of A(1). Further, the separation of Paragraph

10

A(1) from Paragraph A(3) indicates the parties intended the provisions to be read separately to be applied to different circumstances rather than the conjunctive reading suggested by Plaintiff. Consequently, this Court finds the applicable provision of the Agreement to be utilized in the calculation of Holden & Carr's fee is Paragraph A(3), permitting 45% of the first $200,000 recovered and 50% of the amount in excess of $200,000 as an attorneys' fee.

Plaintiff next contends Paragraph D of the Agreement trumps all of the provisions of Paragraph A, since Plaintiff terminated Holden & Carr's representation, post-trial and post-judgment. The Agreement provided for Holden & Carr's representation "through trial only." Trial concluded and judgment was rendered on February 18, 2005. Holden & Carr's representation under the Agreement ceased at that time. The activity post-judgment, including the filing of post-trial motions and appeals, was extra-contractual and not contemplated by the Agreement. Therefore, when Plaintiff ostensibly terminated Holden & Carr's representation on July 11, 2005, the obligations arising from the Agreement had been performed and completed. As a result, Paragraph D's alternative compensation scheme became academic, as the calculation formula of Paragraph A had already become effective.

Additionally, the practical effect of Plaintiff's urged position would result in an irrational interpretation of the

parties' intentions at the time of the creation of the Agreement. Plaintiff's interpretation would permit a client to terminate the legal representation in a deliberate effort to avoid the more lucrative negotiated compensation formula. This after the firm had taken on the time, expense, burden and risk of litigation which is always the consideration in entering into a contingency contract and which permits a plaintiff who otherwise could not afford representation to pursue his claims. In this case, the burden and risk taken on by Holden & Carr bore fruit for Plaintiff - a benefit for which he must now pay as he agreed.

IT IS THEREFORE ORDERED that Motion for Summary Judgment filed by Holden & Carr (Docket Entry #385) is hereby **GRANTED**. Accordingly, Holden & Carr is entitled to the contingency fee as calculated under the Paragraph A(3) of the Agreement on any sums recovered on the judgment stemming from the trial of this case. The attorney lien claimed by Holden & Carr extends to the amount resulting from this calculation and is deemed valid under Oklahoma law.

IT IS FURTHER ORDERED that the Cross Motion for Summary Judgment filed by Capron & Edwards (Docket Entry #390) is hereby **DENIED**.

IT IS SO ORDERED this 18th day of May, 2007.

KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE