## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| Samuel D. Edwards, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | Case No. 04-CV-00096-KEW |
| | ) | |
| PepsiCo, Inc., Pepsi-Cola Company, | ) | |
| B.W. Sinclair, Inc., CONOPCO, Inc., | ) | |
| Wm. W. Meyer & Sons, Inc., and | ) | |
| Lockwood Greene Engineers, Inc., | ) | |
| | ) | |
| Defendants-Appellants. | ) | |

## TRIAL BRIEF

C&E submits the following brief regarding issues anticipated to be raised during the trial scheduled to begin on Monday, September 23, 2013:

### I.  H&C Exhibits 2 and 5[1]

H&C Exhibits 2 and 5 are documents created for litigation which contain the assertions of H&C of what items should have been included in the H&C bills to Mr. Edwards.  These exhibits do not summarize what is in the billing, they attempt to create new bills (6 to 7 years after the time periods at issue) in a form which H&C claims is more accurate than the monthly bills contemporaneously created and sent to Mr. Edwards.  The exhibits are allegedly derived from multiple layers of hearsay.

FRE 803 provides for the following exception to the hearsay rule:

(6) *Records of a Regularly Conducted Activity.* A record of an act, event, condition, opinion, or diagnosis if:

---

[1] These exhibits are identical as produced to C&E.  They are both a 20 page table purporting to detail time entries omitted from the 2004-2005 billing on Mr. Sam Edwards' case.  This "analysis", however, was created approximately 6 years after Mr. Edwards terminated H&C as his counsel.

> (A)  the record was made at or near the time by--or from information transmitted by--someone with knowledge;
> (B)  the record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit;
> (C)  making the record was a regular practice of that activity;
> (D)  all these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902(11) or (12) or with a statute permitting certification; and
> (E)  neither the source of information nor the method or circumstances of preparation indicate a lack of trustworthiness.

This exception does not apply to H&C Exhibits 2 and 5.

First, these records were not made at or near the time when the billing was allegedly incurred, or from someone with knowledge of the issues stated therein. These records were made during litigation of the fee dispute, approximately 7 years after H&C's representation of Mr. Edwards terminated. Moreover, the records were made by those who had no direct involvement in the representation of Mr. Edwards.

Second, these records were not kept in the course of regularly conducted activities of the business of H&C – they were created for litigation purposes only. As such, they do not meet the definition of the hearsay exception. See, e.g., *Timberlake Const. Co. v. U.S. Fidelity & Guar. Co.,* 71 F.3d 335, 342 (10th Cir. 1995) ("It is well-established that one who prepares a document in anticipation of litigation is not acting in the regular course of business.").

Third, making these records is not part of the regular practice of billing H&C clients. The regularly created billing records were sent out monthly during the representation, and those records differ from those offered by H&C.

Fourth, the information from which the records were allegedly created cannot be authenticated. Again, these exhibits are the product of the advocacy of H&C for higher

bills, they are not summaries of actual billing.  H&C principals have simply made up the billing as they would like it to have been, not as it was.

Fifth, both the source of information and the circumstances of preparation of these exhibits indicates a lack of trustworthiness.  That the records differ from H&C's representations to their client, Mr. Edwards, indicates a lack of trustworthiness.[2] That the records were created in litigation to further an argument developed after the Opinion from the Tenth Circuit (which created a financial motive for H&C to overstate the number of hours invested in the case and the costs incurred) indicates a lack of trustworthiness.  The motives of an author are relevant to the trustworthiness evaluation under FRE 803(6).  *Echo Acceptance Corp. v. Household Retail Services, Inc.,* 267 F.3d 1068, 1091 (10th Cir. 2001).  That the information is summarized by those who were not involved in the process of litigating on behalf of Mr. Edwards indicates untrustworthiness.  See, e.g., *United States v. Gwathney,* 465 F.3d 1133, 1141 (10th Cir., 2006) ("Double hearsay in the context of a business record exists when the record is prepared by an employee with information supplied by another person.").

Because H&C must meet all of the requirements of FRE, Rule 803(6) to admit these exhibits, and because H&C cannot meet any of these requirements, Exhibits 2 and 5 should not be admissible.

## II.  Judicial Estoppel

---

[2] The monthly bills sent to Mr. Edwards were audited monthly (i.e. less than 6 years from the time when the work detailed therein as actually performed), were audited by the people who actually performed the work, and were made pursuant to the fiduciary duty to the client.  Conversely, H&C's exhibits were made 6 to 7 years after the work for the client was performed, were "audited" by those who did not directly represent Mr. Edwards, and were made to further self-interest only.

H&C has insisted in this Court that their contract, the same contract under which H&C seeks fees now, obligated H&C to represent Mr. Edwards through trial only, and not beyond. Indeed, H&C was successful at obtaining an order from this Court finding the same as a matter of law. This representation by H&C has persisted in this case without contradiction from H&C. Thus, H&C represents that, in forming its contract with Mr. Edwards (i.e. the meeting of the minds), H&C only expected to receive compensation under the hourly fee provision for time invested through trial only.

The H&C contract (Dkt. No. 360, p. 5) expressly provides that H&C contracts to represent Mr. Edwards "through trial only". Id. There is no other contract at issue, and no allegation or evidence of any alteration of this agreement between Mr. Edwards and H&C. Because H&C seeks payment under its contract with Mr. Edwards, H&C should only be entitled to receive compensation for work H&C agreed to perform under the contract, i.e. "through trial only." Additional work which might have been performed by H&C was not pursuant to the H&C contract with Mr. Edwards. Allowing H&C to recover, under a contract theory, for work which they have expressly represented to this Court is not part of their contractual obligation would allow H&C to make a mockery of this Court. This would allow H&C to assert directly opposite facts when convenient to H&C, claiming that its representation ended with trial (when doing so was advantageous to H&C), then claiming the opposite (when an opposite claim was advantageous to H&C). This is precisely what judicial estoppel is designed to eliminate. See, e.g., *In re Johnson*, 518 F.2d 246, (10th Cir. 1975) ("Under the doctrine of judicial estoppel a party and his privies who have knowingly and deliberately assumed a particular position are estopped from assuming an inconsistent position to the prejudice of the adverse party.");

*Autos, Inc. v. Gowin*, 2007 U.S.App.Lexis 18864 (10th Cir. 2007).[3]  Last, the fact that H&C did not ultimately succeed in benefiting from its prior representations is not determinative.  See, e.g., *Ryan Operations, G.P. v. Santiam-Midwest Lumber Co.*, 81 F.3d 355, 361 (3rd Cir. 1996); *Autos*, 2007 U.S.App.Lexis 18864 ("'Because the doctrine [of judicial estoppel] is intended to protect the judicial system, rather than the litigants, detrimental reliance by the opponent of the party against whom the doctrine is applied is not necessary'", quoting *Browning Mfg. v. Mims*, 179 F.3d 197, 205 (5th Cir. 1999).)

H&C is no stranger to making opposite statements of fact when it is beneficial to H&C.  As previously detailed for this Court during the summary judgment proceedings, H&C interpreted a nearly identical contract as that at issue with Mr. Edwards to give rise to the opposite outcome in a case in which H&C represented Ms. Kerry Schneidewind.  In the Schneidewind case, the hourly fee provision yielded a higher recovery to H&C, so H&C endorsed the opposite interpretation of the Schneidewind contract as H&C endorsed for Mr. Edwards' contract.  Seeking fees for work done <u>after</u> trial under a contract in which H&C previously represented to this Court (as well as to the Tenth Circuit Court of Appeals) it agreed to representation "through trial only", is a similar effort to take advantage of opposite representations of facts.[4]  This is precisely the

---

[3] Additionally, this trial court previously determined that the H&C contract obligated H&C to represent Mr. Edwards through trial only.  Dkt. No. 409.  The Tenth Circuit of Appeals reversed the holding of the trial court, but the reversal pertained to the fact that the contingent fee was due upon <u>recovery</u> of funds, an accomplishment H&C did not make.  Neither H&C's position with regard to the scope of its obligation under the H&C contract, nor this Court's finding regarding the scope of H&C's obligation under the H&C contract have been affected by the Tenth Circuit Opinion.

[4] While legal theories might be subject to pleading in the alternative, facts are not.  H&C represented that its agreement with Mr. Edwards stopped at the conclusion of trial.

situation which the doctrine of judicial estoppel is designed to eliminate.  One must be careful about one's representation to the Court.  Here, H&C can hardly be heard to object to this Court holding H&C to its own truth.  The truth is not so flexible as the financial objectives of H&C, and allowing anyone (but especially a law firm) to endorse opposite facts as H&C has would only serve to demean the judicial system and the officers thereof.

The same outcome would be reached under legal considerations as under equitable considerations.  Under contract law, H&C can only recover that for which it contracted. As admitted by H&C, H&C's contractual duties were "through trial only".  Thus, H&C will not lose the benefit of its bargain by receiving an award of fees through trial only.

No attorney or paralegal time alleged to have been incurred after trial should be considered for reimbursement to H&C.

### III.  Formula for Computation of Amount of Pincipal Owed to Capron & Edwards

Total Principal Amount Transferred to H&C
*Minus* H&C Fee Entitlement
*Minus* H&C Cost Entitlement
_____
*Equals*: Amount of Principal Owed to C&E

The Total Principal Amount Transferred to H&C is a known amount, $997,302.35.  Two transfers have been made to H&C, one in the amount of $928,276.50 and one in the amount of $69,025.85.  These transfers are documented and not disputed.

_____

Regardless of the course of these proceedings, H&C's contractual expectations end with trial.

Subtracting the principal amounts owed to H&C (i.e. exclusive of any interest), the remainder of this principal amount is owed to C&E.

C&E also acknowledges that two transfers of undisputed principal amounts have been transferred to C&E.  Specifically, the amount of $628,780.84 was transferred to C&E on 7/1/2009, and the amount of $94,888.88 was transferred to C&E on 4/23/2013. The dates of transfer are relevant to the amounts of interest owed, not to the calculation of principal owed.  Calculating the principal owed should be the simple formula above.

The ultimate order of this Court should state the full entitlement of C&E, including the amounts distributed in advance of the hearing of this matter.  Naturally, H&C is entitled to a set off of the amounts distributed.  A setoff, however, can only be calculated if the proper beginning point is established.  Thus, C&E requests that the full entitlement of principal owed be established by the above formula, that the order further state the amount of the two offsets, and that the order find the particular dates of:  (1) the principal transfer to H&C; and (2) both distributions of principal released to C&E.

## IV. Interest

C&E contends that all interest earned on the funds at issue belongs to C&E. Okla. Stat. tit. 5, App. 3-A, Rule 1.15(i). According to H&C, the funds are currently being held in trust.   The interest on funds subject to Rule 1.15(i) "shall not be used by [H&C] for any purpose." Id.

The interest earned, however, is not sufficient to cover the interest owed to C&E. C&E is entitled to interest on the entire amount of principal owed at the minimum rate of 6%.  Okla. Stat. tit 15, § 266. Interest on the principal amount of $628,780.84, transferred to C&E on 7/1/2009 after being held since 10/31/08, is $25,151.23.    Interest on the

principal amount of $94,888.88, transferred to C&E on 4/23/2013 after being held since 10/31/08, is $26,094.20.

H&C has suggested that the interest recoverable by C&E is limited to the interest H&C earned on the funds belonging to C&E which H&C improperly withheld from C&E.  There is no law to support this fact offered by H&C or found by C&E. Furthermore, to the extent the Court is now treating this as an equitable matter (distinct from the treatment prior to the appeal), then equitable principles should weigh in favor of C&E obtaining the full interest from these funds.  H&C knew that its claim was limited, yet persisted in holding massive sums of C&E's money for years.  H&C attempted to use its improper actions to extort relief from C&E to which H&C had no rightful claim. Additionally, though H&C was ordered to hold the funds at issue in an interest bearing account, H&C has not done so with all of the funds.  H&C has unclean hands.

<div style="margin-left: 40%;">

Respectfully submitted,

**Capron & Edwards, PLLC**

/s/ Stephen J. Capron, OBA# 18350
406 South Boulder Ave., Suite 400
Tulsa, Oklahoma 74103
(918) 398-7600 – Telephone
(918) 398-7602 – Facsimile
*Attorney for Capron & Edwards and*
*for Sam Edwards*

</div>

<div style="text-align: center;">

**CERTIFICATE OF SERVICE**

</div>

I hereby certify that on the 20th day of September, 2013, a true and correct copy of the forgoing instrument was served on the parties by means of the cm/ecf system to the following:

David R. Ross     drr@nwcdlaw.com

Eugene Robinson      grobinson@grobinsonlaw.com

Fred C. Cornish      fred.cornish@mcafeetaft.com,
debbie.chamberlain@mcafeetaft.com

J. Christopher Davis      cdavis@johnson-jones.com, jbalman@johnson-jones.com, sscroggs@johnson-jones.com, thughes@johnson-jones.com

Joel L. Wohlgemuth      jlw@nwcdlaw.com, psg@nwcdlaw.com

Linda McGowan      mcgowan762002@yahoo.com

Michael Burrage      mburrage@whittenburragelaw.com,
docketing@whittenburragelaw.com

Michelle B. Skeens      michelleskeens@holdenlitigation.com,
hm@holdenlitigation.com

Phillip P. Owens , II      po@owenslawofficepc.com,
powens@chrisharperlaw.com

Robert P. Coffey , Jr      robert@cgmlawok.com, amy@cgmlawok.com,
crystal@cgmlawok.com, reception@cgmlawok.com

Thomas E. Steichen      tom.steichen@mcafeetaft.com,
julia.wallis@mcafeetaft.com

Thomas H. Gudgel , III      tom@cgmlawok.com, crystal@cgmlawok.com

Timothy    E.    Lurtz      czwg@czwglaw.com,    tel@czwglaw.com,

tlurtz@lawoklahoma.com

/s/ Stephen J. Capron